## FRANK HANDLEY v. STATE.

No. A-9418. Dec. 7, 1938.
(85 P. 2d 436.)

J. Q. A. Harrod and Laynie W. Herrod, both of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and S. T. Roberson, Co. Atty., of El Reno, for the State.

BAREFOOT, J. Defendant was charged in the district court of Canadian county with the unlawful possession of 257 pints of intoxicating liquor, and as a second offender; was convicted and sentenced to serve a term of one year in the penitentiary, and pay a fine of $50, and has appealed.

The first error assigned by defendant is that the search warrant used by the officers was void for the reason it did not run in the name of the state of Oklahoma, as provided by article 7, of section 19, of the Constitution of this state, Okla. St. Ann. Const. art. 7, § 19, which is as follows:

"The style of all writs and processes shall be 'The State of Oklahoma.' All prosecutions shall be carried on in the name and by the authority of the state of Oklahoma. All indictments, informations, and complaints shall conclude, 'Against the peace and dignity of the state.'"

And section 19, Okla. Stats. 1931, Okla. Stats. Ann., title 12, section 51, which is the same as the above.

The style of the search warrant in this case was:

"In the Justice of the Peace Court in and for El Reno District in Canadian County, Oklahoma.

"The State of Oklahoma ⎫
"County of Canadian ⎭ ss.

"In the Name of the State of Oklahoma.

"To the Sheriff, or any Peace Officer of said County, Greetings:"

The return was made by John Harrison, sheriff.

In support of the above proposition counsel for defendant cites the following cases: Richmond v. Robertson, 50 Okla. 635, 151 P. 203; Latimer v. Giles, 29 Okla. 234, 116 P. 795; Little v. Little, 5 Mo. 227, 32 Am. Dec. 317; Martin v. Hostetter, 59 Okla. 246, 158 P. 1174; Conditt v. McKinley, 94 Okla. 266, 221 P. 1007; Dunn v. State, 40 Okla. Cr. 76, 267 P. 279; Myers v. State, 40 Okla. Cr. 170, 267 P. 867; Murray v. State, 47 Okla. Cr. 219, 287 P. 781; McAdoo v. State, 36 Okla. Cr. 198, 253 P. 307; Sloan v. State, 45 Okla. Cr. 228, 282 P. 898; Woods v. State, 46 Okla. Cr. 288, 287 P. 769; State v. Bayliff, 59 Okla. Cr. 381, 60 P. 2d 402.

A careful reading of these cases reveals that the facts therein are different from the case at bar. In the case of Richmond v. Robertson, supra, which involved an order of sale of real estate, it did not run in the name of the state, and was not directed to the sheriff. It simply used the terms: "State of Oklahoma, County of Kingfisher—ss."

The same is true of many of the cases above cited. In the cases of Myers v. State, and Dunn v. State, supra, the "State" is not mentioned, but the search warrant is directed: "To any sheriff, constable, marshal, or policeman in the county of Oklahoma, greeting."

The above cases seem to be based upon the case of McAdoo v. State, supra. In this case the style of the search warrant was as follows:

"In the County Court.

"State of Oklahoma, County of Cleveland—ss.:

"Search Warrant.

"To Frank Boggs, Sheriff of Cleveland County, Oklahoma, or to Any Deputy Therein."

A glance at it at once reveals that the style used in that case is far different from the one here involved. In the instant case the search warrant used the words:

"The State of Oklahoma ⎱ ss.
"County of Canadian ⎰

"In the Name of the State of Oklahoma.

"To the Sheriff, or any Peace Officer of said County, Greetings:"

It does not occur to us that because there is used the words "In the name of" before "The State of Oklahoma", is any reason to say that the process does not run in the name of the state, and to so hold would be placing a technical construction upon the constitutional and statutory provisions above cited that would be unwarranted.

Section 3226, Okla. Stats. 1931, Okla. Stats. Ann. title 22, section 1226, provides the exact form to be used in a search warrant and is in identical terms with the one used in this case. The statute provides:

"The warrant must be in substantially the following form:

"County of ———.

"In the name of the State of Oklahoma. To any sheriff, constable, marshal or policeman in the county of ———."

We have carefully examined the case of State v. Bayliff, 59 Okla. Cr. 381, 60 P. 2d 402, cited and relied upon. It does not support the contention made by defendant. In that case the style of the search warrant was as follows:

"In the name of Alfalfa County, Oklahoma.

"Search Warrant.

"To the Sheriff, Deputy Sheriff of Alfalfa County, Oklahoma."

The state is not mentioned, and the court rightfully held that it did not run in the name of the state, but in the name of Alfalfa county. It will thus be seen that the search warrant in the instant case ran in the name of the state, and was in the exact words of the statute above quoted, and therefore the court did not err in overruling the motion to suppress the search warrant for this reason.

The next assignment of error is that the court erred in not sustaining the motion to quash the search warrant in this case, for the reason that it is based upon an affidavit which is wholly insufficient to warrant the justice of the peace in issuing the same. The affidavit was as follows:

"W. N. Farris, who being first duly sworn according to law, deposes and says, that on or about the 5th day of February, 1937, in Canadian County, State of Oklahoma, the following premises are being used as a place where spirituous, vinous, fermented, and malt liquors, and imitations thereof, and substitutes therefor, are received, manufactured, stored and kept for the purpose and intent of being sold, bartered, given away, or otherwise furnished in violation of the prohibitory laws of the State of Oklahoma, to wit:

"All the lands, buildings, outbuildings, the residence and appurtenances situated on lots one to eight inclusive, block 5 Riley's Addition to the city of El Reno, said residence being occupied by Frank Handley.

"Affiant further states and says, that said residence is used for the purpose of storing intoxicating liquor and is a place of public resort in that divers and sundry persons gather and congregate there for the purpose of buying and drinking intoxicating liquor.

"Wherefore affiant asks that a Search Warrant issue, directed to a peace officer of said County, commanding him to search the above described premises, and to seize all

liquors there found, together with the vessels in which it is contained, and all implements, furniture, and fixtures used or kept in connection with such violations of the prohibitory laws of the State of Okalhoma.

"The said premises are located as herein described, in the City or Town of———in said County and State, and used contrary to the form of the statute in such case made and provided and against the peace and dignity of the State.

"(Signed) W. N. Farris."

The contention is that the above search warrant does not state facts sufficient to justify the issuance of the search warrant, and that on its face it shows that it was based upon information and belief. We cannot agree with this contention. It may be true that more facts might have been alleged in the affidavit, and as we have heretofore stated, it would have been best to do so, yet it does state in positive terms that the premises described are "being used as a place where spirituous, vinous, fermented and malt liquors * * * are received, manufactured, stored and kept for the purpose and intent of being sold, bartered, given away, or otherwise furnished in violation of the prohibitory laws of the state of Oklahoma". And, after this general statement is made in the affidavit, the maker thereof specifically states: "that said residence is used for the purpose of storing intoxicating liquor and is a place of public resort in that divers and sundry persons gather and congregate there for the purpose of buying and drinking intoxicating liquor."

This is a positive statement by the party making the affidavit, and there is nothing therein to indicate that the statements so made are on information and belief, as is true in many of the authorities cited and relied upon by defendant. We reiterate that it is better for the officer to state the exact facts in the affidavit upon which the issuance of the search warrant is based, but this court has many times held that where the affidavit is in positive terms, that it will not be set aside on motion to suppress, for the reason that it was made upon "information and belief." McHenry

v. State, 61 Okla. Cr. 450, 69 P. 2d 90; Denton v. State, 62 Okla. Cr. 8, 70 P. 2d 135; Rhodes v. State, 40 Okla. Cr. 124, 267 P. 490; Phillips v. State, 34 Okla. Cr. 52, 244 P. 451; Cahill v. State, 38 Okla. Cr. 236, 260 P. 91; Smith v. State, 30 Okla. Cr. 144, 235 P. 273.

The affidavit in the case at bar is much stronger and more positive than the affidavit in the case of Hannan v. State, 29 Okla. Cr. 203, 233 P. 249, which is cited and quoted by defendant in his brief. In that case the affidavit was a "John Doe" warrant, and did not give the name of the defendant. It only stated that intoxicating liquor was being kept on the premises "with the intent of the said John Doe to sell the same in violation of the law, and for the purpose of committing a public offense". [page 250]. There were no such positive statements as in the instant case "that said residence is used for the purpose of storing intoxicating liquor", and that it was "a place of public resort", and that "divers and sundry persons gather and congregate there for the purpose of buying and drinking intoxicating liquor". In that case the defendant took the witness stand and denied all knowledge of the liquor being on the premises. The amount being less than one quart, and in a store room in a hotel which was being conducted by defendant, and to which many other persons had access. He admitted the possession of certain wine found upon the premises which he said was being used for his own use. The defendant did not take the witness stand in this case, as he had a right not to do.

Defendant in his brief cites certain authorities defining the word "storage". These decisions are generally with reference to the "storing of merchandise". The same reasoning might not apply to the storing of "intoxicating liquor". Certainly the possession of 257 pints of liquor, concealed under the floor, and a trap door made for the securing of the same, would indicate to the ordinary person in this jurisdiction, that the owner thereof intended it to be "stored" there for the purpose of securing the same at in-

tervals to sell. At any rate the statutes of this state say that the possession of over one quart is a "prima facie intent to barter, sell, give away or otherwise furnish the same", in violation of the laws of this state. We think that when the Legislature used the word "storage" it did not intend the meaning to be construed as stated by defendant "that the residence or some part of it, was set aside as a place of storage where the public generally brings its goods and stores them for hire." But rather it was the intention of the Legislature when it used this word in reference to storing intoxicating liquor, that it meant placing them by one who intended to sell in violation of law, at a place where they could be stored and easily accessible for the purpose of sale.

The contention that the phrase "place of public resort" used in our statute means such a place of public resort as a "store, shop, hotel, boarding house, or place of storage," can not be upheld for the reason that such a construction would do away with the very terms of the statute. Oklahoma Statutes, 1931, sec. 2639, Okla. Stats. Annotated, title 37, sec. 88, in describing what is necsesary before a residence may be searched, and after using the words quoted above, says: "or unless such residence is a place of public resort." Certainly in construing the statute it is necessary for the court to give effect to those words constituting the closing sentence. It is a well known fact that many parties, under the protection of the Constitution, the statutes, and the decisions of this court, are attempting to use the home as a place of "storage," and as a place of "public resort," in order to better protect them in the violation of the law. That they so forget the sanctity of the home in order that they may carry on the liquor business therein, in violation of law, was the very reason for the Legislature to put the clause "or place of storage, or unless such residence is a place of public resort," in the statute. McHenry v. State, 61 Okla. Cr. 450, 69 P. 2d 90; Denton v. State, 62 Okla. Cr. 8, 70 P. 2d 135.

The testimony revealed that the defendant and his son, Fletcher Handley, were jointly charged with the unlawful possession of 257 pints of bonded, tax paid liquor. It was found at the home of defendant, in the city of El Reno, Canadian county. It was discovered under the floor, which was reached by means of a trap door that had been cut in the floor. Defendant's wife, two small children, and his son, Fletcher Handley, who lived at his father's home, were present at the time the search was made, and defendant appeared just as the search was being completed. There was some discussion between the sheriff and defendant as to who would be arrested, and the sheriff arrested and took the defendant's son, and requested defendant to come in the next morning. The record further reveals that defendant and his son had been tried and convicted on many previous occasions for a violation of the prohibition laws. Defendant stated to one of the officers who testified "and on the way up there, why, Frank made the remark about he was going to continue to sell whisky; he couldn't find work and so on and so forth, like that, just general conversation." This conversation in substance was had with other officers.

The son of defendant, Fletcher Handley, testifying in this case, denied having any knowledge of the whisky, or of the trap door in the room. Under the evidence as shown by the record, we find no cause for a reversal of this case. It reveals defendant as a confirmed violator of the prohibition laws, and with an intention on his part not to reform.

The judgment of the district court of Canadian county is therefore affirmed.

DAVENPORT, P. J., and DOYLE, J., concur.